# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**GABRIEL RODRIGUEZ AGUIRRE and**
**ELENO RODRIGUEZ AGUIRRE,**

      **Movants/Petitioners-Defendants,**

**vs.**                              **Civ. No. 98-1195 LH/LCS**
                                       **Civ No.  98-1318 LH/LCS**
                                     **CR  No. 92-0486 JC**

**UNITED STATES OF AMERICA,**

      **Respondent-Plaintiff.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

      This consolidated case is before the Court on Petitioners' Motions to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255.  Petitioners, currently incarcerated, attack the Judgments and Sentences entered on March 31, 1995, in the case styled *United States of America v. Gabriel Rodriguez-Aguirre, et al.*, and numbered CR 92-486 JC, United States District Court for the District of New Mexico.  The United States Magistrate Judge, having considered the arguments, pleadings, relevant law, and being otherwise fully informed, finds that the Motions are not well-taken and recommends that they be DENIED.

## PROPOSED FINDINGS

      1.      In October, 1992, a federal grand jury returned a twenty-three count indictment against Petitioners and twenty-one other defendants.  The original indictment charged Gabriel Rodriguez-Aguirre with operating a continuing criminal enterprise and conspiracy to distribute

marijuana, as well as additional substantive counts of marijuana distribution and money laundering. Eleno Rodriguez-Aguirre was charged with conspiracy to distribute more than 1,000 kilograms of marijuana and conducting a financial transaction with knowledge that the transaction was designed to avoid federal reporting requirements. The original indictment was the subject of a lengthy jury trial before the Honorable John E. Conway, Chief United States District Judge, beginning in January, 1994, which lasted six months. After deliberating more than six weeks, the jury acquitted Gabriel Rodriguez-Aguirre of one count of money laundering and, on July 12, 1994, Chief Judge Conway declared a mistrial as to the remaining counts against Petitioners.

2.      In August, 1994, the grand jury returned a superseding indictment naming Gabriel Rodriguez-Aguirre and Eleno Rodriguez-Aguirre, along with eight co-defendants. The superseding indictment charged Gabriel Rodriguez-Aguirre with operating a continuing criminal enterprise, conspiracy to distribute marijuana and cocaine, unlawful importation of marijuana and illicit investment, as well as additional substantive counts of marijuana distribution and money laundering. Eleno Rodriguez-Aguirre was charged with conspiracy to distribute more than 1,000 kilograms of marijuana, conspiracy to possess with intent to distribute cocaine, conspiracy to distribute cocaine, possession with intent to distribute cocaine, receiving and investing income from the distribution of controlled substances, and conducting a financial transaction with knowledge that the transaction was designed to avoid federal reporting requirements.

3.      Trial commenced on the superseding indictment on November 14, 1994, before the Honorable Lucius D. Bunton, III, Senior United States District Judge. Paul Kennedy, Esq. represented Gabriel Rodriguez-Aguirre. Francisco Mario Ortiz, Esq. represented Eleno Rodriguez-Aguirre. The second trial lasted one month. The Government called 192 witnesses in

its case-in-chief.  On December 15, 1994, following three days of deliberation, the jury found

Petitioners guilty on all counts.

4.	On March 30, 1995, Gabriel Rodriguez-Aguirre was sentenced to 360 months

incarceration and a $4,000,000.00 fine.  On the same day, Eleno Rodriguez-Aguirre was sentenced

to 235 months incarceration.

5.	Petitioners appealed their convictions and sentences.  On appeal, Mr. Kennedy

represented Gabriel Rodriguez-Aguirre and Brenda Grantland, Esq., Petitioners' current counsel,

represented Eleno Rodriguez-Aguirre.  On March 11, 1997, the Tenth Circuit affirmed.  *See*

*United States v. Gabriel Rodriguez-Aguirre*, 108 F.3d 1228 (10th Cir. 1997); *United States v.*

*Eleno Rodriguez-Aguirre*, 108 F.3d 1284 (10th Cir. 1997).  On October 6, 1997, the United

States Supreme Court denied certiorari with respect to Gabriel Rodriguez-Aguirre.  *United States*

*v. Rodriguez-Aguirre*, 522 U.S. 847 (1997).  On October 20, 1997, certiorari was denied with

respect to Eleno Rodriguez-Aguirre.  *United States v. Aguirre*, 522 U.S. 931 (1997).

6.	Gabriel Rodriguez-Aguirre filed his § 2255 Motion *pro se* on October 1, 1998.

Eleno Rodriguez-Aguirre filed his § 2255 Motion to Vacate through counsel on October 21,

1998.  On July 27, 2000, the cases were consolidated on stipulation of the parties.  The Court

held evidentiary hearings on December 10, 1999, March 20, 1999, and April 24, 2000.

7.	In his §2255 Motion, Gabriel Rodriguez-Aguirre asserts the following claims for

relief, none of which were raised on appeal:

I.	His conviction was obtained through bribed testimony;

II.	His conviction was obtained through bribery, coercion and/or known use of
false testimony by the trial judge;

3

III.     He was deprived of substantive due process because the trial judge interfered with his plea-bargain negotiations;

IV.     His conviction was procured with evidence obtained in violation of the Fourth Amendment;

V.     The prosecution and the trial judge concealed the fact that the star prosecution witness was convicted of a felony shortly before Petitioner's trial began and was paid $40,000;

VI.     The Government failed to disclose the arrest, jail and/or prison records of its witnesses in violation of *Brady*;

VII.     He was sentenced under the Sentencing Guidelines for conduct which occurred before November 1, 1987, the effective date of the Guidelines;

VIII.     He was sentenced under the 1994 Guidelines for conduct which took place before the 1994 Guidelines took effect;

IX.     His sentence should run concurrent with, rather than consecutive to, his 1991 conspiracy conviction;

X.     The Court did not have subject matter jurisdiction over counts X, XVI, and XXII;

XI.     Denial of effective assistance of counsel at trial in that his attorney failed to:

    a)     move to suppress evidence;

    b)     request severance from co-defendant who would alert the jury to his prior conviction;

    c)     present evidence of material alibis;

    d)     move to dismiss Counts XI, XII, XIV, and XXII for failure to prove the element of "affecting interstate commerce";

    e)     object to lack of subject matter jurisdiction on count X, XVI and XXII;

    f)     object to introduction of bad acts;

    g)     challenge the Government's alleged discovery of an intact kilogram of cocaine buried 12 feet underground in a property it had seized two years previously;

    h)     request a limiting instruction on the use of co-defendants' guilty pleas;

    i)     move to dismiss indictment on the basis of outrageous government conduct from its exaggerated criminal bribes and purchase of false

testimony;

j)      request that his sentence run concurrently with an undischarged term; and

k)      object to his sentence for conduct outside the indictment as well as for conduct of others.

XII.     Denial of effective assistance of counsel on appeal.

8.     On April 5, 1999, I recommended that claims I through X be dismissed as barred by procedural default. Gabriel Rodriguez-Aguirre failed to object to my Proposed Findings and Recommended Disposition. On April 30, 1999, the District Court adopted my findings and recommendation and dismissed claims I through X with prejudice. On October 12, 1999, Gabriel Rodriguez-Aguirre withdrew the portions of his ineffective assistance of trial counsel claim relating to issues II, III, VI, VII, and X, and withdrew the portions of his ineffective assistance of appellate counsel claim relating to issues VI and VII.

9.     In his §2255 Motion, Eleno Rodriguez-Aguirre asserts the following claims for relief, none of which were raised on appeal:

I.      His conviction was obtained through the uncorroborated testimony of 21 government informants, all of whom were promised leniency, and/or immunity from forfeiture, and/or financial rewards in exchange for their testimony against him in violation of 18 U.S.C. § 201 (c)(2);

II.     The prosecutor committed misconduct by concealing the amount of cash paid to Alicia Armendariz and by concealing her felony arrest;

III.    His conviction was procured with evidence obtained in violation of the Fourth Amendment;

IV.    The Government failed to disclose the arrest, jail and/or prison records of its witnesses;

V.     Denial of effective assistance of counsel at trial in that his attorney failed to:

a)      move to suppress evidence;

b)     move to dismiss the indictment based on governmental misconduct;

c)     challenge the Government's alleged discovery of a kilogram of cocaine buried 12 feet underground in a property it had seized two years previously;

d)     request a limiting instruction on the use of co-defendants' guilty pleas; and

e)     file an affidavit in support of the motion challenging, under the Jury Selection Act, the second trial judge's dismissal of jurors prior to voir dire.

10.     The Government contends that Eleno Rodriguez-Aguirre's Petition is time-barred because it was filed more than one year after his conviction became final. The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to all cases filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA provides that a one-year period of limitation applies to motions filed under § 2255. *See* 28 U.S.C. § 2255. This period of limitations runs from the latest of four possible dates:

1.     the date on which the judgment of conviction became final;

2.     the date on which the impediment to making a section 2255 motion created by governmental action in violation of the Constitution or United States law is removed;

3.     the date on which the right asserted by the movant was initially recognized by the United States Supreme Court (if said right is newly recognized by the Court and made retroactively applicable to cases on collateral review);

    or

4.     the date on which the facts supporting the asserted claim could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

11.     In this case, the Supreme Court denied certiorari on October 20, 1997. Eleno Rodriguez-Aguirre filed his Motion, through counsel, on October 21, 1998. More than one year

passed between October 20, 1997, the date that the judgment of conviction became final, and October 21, 1998, the date he filed his petition for relief through counsel. Eleno Rodriguez-Aguirre is not entitled to application of the "prisoner mailbox rule" because he was not proceeding *pro se* when he filed his Petition. *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (filing occurs when the *pro se* prisoner deposits documents with the prison mail system to be mailed to the court). Eleno Rodriguez-Aguirre's § 2255 Motion is therefore untimely.

12.     Eleno Rodriguez-Aguirre does not assert that his application comes within the parameters of categories two, three or four, but instead, argues that his motion was timely by operation of Federal Rule of Civil Procedure 6. Rule 6 provides that "the date of the act, event or default from which the designated period of time begins to run shall not be included." Fed. R. Civ. P. 6(a). Petitioner also relies on Supreme Court Rule 30 (1) and Federal Rule of Criminal Procedure 45(a), which are substantially similar. *See* Sup. Ct. R. 30(1) and Fed. R. Crim. P. 45(a). Under all these rules, one year from October 20, 1997 was October 20, 1998.

13.     Moreover, Petitioner's contention that he was entitled to a year-and-a-day limitation period, rather than a one-year period,  ignores the plain meaning of  § 2255, which states that the period runs one year from the date the judgment of conviction became final. *See* 28 U.S.C. § 2255. When a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start date of the limitations period. *See Mickens v. United States,* 148 F.3d 145, 148 (2d Cir. 1998). *See generally United States v. Simmonds*, 111 F.3d 737, 745-46 (10th Cir.1997) (holding that prisoners whose convictions became final on or before April 24, 1996, the effective date of the AEDPA, must file their § 2255 motions before April 24, 1997). Therefore, Petitioner's argument is unavailing. Under these circumstances, Eleno

7

Rodriguez-Aguirre's application for habeas relief is barred by the period of limitations contained in § 2255.

14.     Even if Eleno Rodriguez-Aguirre's § 2255 Motion was deemed timely, issues I, II, III and IV would be barred by procedural defendant.  *See generally Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.1998) (holding that one-year limitations period governing § 2254 petitions, which is substantially identical to the period under § 2255, is not jurisdictional).  The United States contends that Eleno Rodriguez-Aguirre's claims are procedurally defaulted because he failed to raise them on direct appeal.  Ordinarily, a § 2255 motion is not available to test the legality of matters which should have been addressed on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).  A movant who failed to present an issue on direct appeal is barred from doing so in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or unless he can show a fundamental miscarriage of justice will occur if his claim is not addressed.  *Id.*

15.     Eleno Rodriguez-Aguirre failed to allege or establish cause and prejudice for his failure to present issues I, II, III and IV on direct appeal.  Furthermore, as he has made no showing of actual innocence, application of the procedural default bar will not result in a fundamental miscarriage of justice.  *See Smallwood v. Gibson*, 191 F.3d 1257, 1269 (10th Cir. 1999). Consequently,  issues I, II, III and IV of  Eleno Rodriguez-Aguirre's application for habeas relief, in addition to being untimely, are barred by procedural default.

16.     In issue V, Eleno Rodriguez-Aguirre asserts ineffective assistance of counsel.  As a general rule, the procedural bar rule of *Frady* does not apply to claims of ineffective assistance of counsel. *United States v. Galloway*, 56 F.3d 1239, 1241 (10th Cir. 1995).  *But see Billy-Eko v.*

*United States*, 8 F.3d 111, 115 (2d Cir.1993) (holding that where§ 2255 petitioner had new

counsel on appeal and claim was based solely on trial record, ineffective assistance of counsel

claims barred by *Frady)*.  Since Eleno Rodriguez-Aguirre's was represented by new (and current)

counsel on appeal, it could be determined that his current claims based upon the trial record

should have been raised on direct appeal.  However, Eleno Rodriguez-Aguirre's untimely

ineffective assistance of counsel claims are not barred by procedural default. *See Galloway*, 56

F.3d at 1241.  These untimely claims, as well as the claims of Gabriel Rodriguez-Aguirre, fail on

the merits.

17.    Petitioners have briefed and argued the following ineffective assistance of counsel

claims on the merits: failure to file motions to suppress; failure to request limiting instruction on

co-defendant's guilty pleas; failure to file a jury selection act declaration; failure to investigate

alibi witnesses; failure to raise an ex post facto argument; and failure to request concurrent

sentencing.  Claims that were not briefed are deemed abandoned.  *See Coleman v. B-G*

*Maintenance Management of Colorado, Inc.*,108 F. 3d 1199, 1205 (10th Cir. 1997); *Williams v.*

*Armontrout*, 679 F. Supp. 916, 922 (W.D. Mo. 1988).

18.    In order to establish ineffective assistance of counsel, Petitioners must show that

their attorneys made errors so serious that counsel was not functioning as the counsel guaranteed

by the Sixth Amendment and the deficient performance prejudiced the defense in such a way as to

render the result of the trial unreliable.  *See Strickland v. Washington*, 466 U.S. 668, 686-87,

(1984).  They must establish "that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466

U.S. at 694.  A habeas corpus petitioner has the burden of establishing both elements of *Strickland.  See id.,* 466 U.S. at 694.

19.     A fair assessment of attorney performance requires a reviewing court "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  "To be ineffective, the representation must have been such as to make the trial a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir.1994).  *See also Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir.1997) (holding that to be constitutionally ineffective, counsel's performance must have been completely unreasonable, not merely wrong).

20.     Petitioners contend that they were denied effective assistance of counsel because their attorneys failed to move to suppress evidence seized without a valid warrant.  They contend that eleven of the real properties were searched without a warrant and assert that the incriminating evidence seized at these properties was subject to suppression.  Petitioners reason that trial counsel was ineffective in failing to file a motion to suppress with respect to this issue.  However, a motion to suppress would have been subject to denial because Petitioners lacked standing to challenge the seizures at issue.

21.     As a threshold matter, in order to mount a Fourth Amendment challenge, Petitioners had the burden of establishing standing by showing that their own rights were violated by the challenged searches and seizures.  *See United States v. Abreu*, 935 F.2d 1130, 1132 (10th Cir. 1991).  In the Fourth Amendment context, the term "standing" is not used in its " 'traditional sense as a  constitutionally-or prudentially-based jurisdictional bar,' " but rather refers to whether

a defendant has shown that his own Fourth Amendment rights were violated by the challenged search and seizure. *United States v. Marchant*, 55 F.3d 509, 512 (10th Cir.1995) (*quoting United States v. Eylicio-Montoya*, 18 F.3d 845, 850 n. 3 (10th Cir.1994)).

22.     Consequently, a primary issue facing defense counsel in deciding whether to file a motion to suppress evidence is whether the search or seizure violated his client's rights. *See United States v. Soto*, 988 F.2d 1548, 1552 (10th Cir.1993).  Whether evidence sought to be introduced was obtained in violation of someone else's Fourth Amendment rights is immaterial, because Fourth Amendment rights are personal and may not be asserted vicariously. *Eylicio-Montoya*, 18 F.3d at 850.  Important standing considerations include ownership, lawful possession, or lawful control of the place searched.  *See United States v. Abreu*, 935 F.2d at 1133.

23.     In determining whether a client has standing to assert a motion to suppress under the Fourth Amendment, the relevant questions are whether he established a subjective expectation of privacy in the property searched, and whether society would recognize that expectation of privacy as objectively reasonable.  *United States v. Betancur*, 24 F.3d 73, (10th Cir. 1994).

24.     At the evidentiary hearing of December 10, 1999, Gabriel Rodriguez-Aguirre testified that, as of October 21, 1992,  he co-owned the Afghan Tree Farm, the Country Club Road "family compound,"  the Red Mountain farm, the Viramontes Farm, the Prieto property, 5320 Del Rey Boulevard, 6715 West Camino del Oro, the Vado Ranch, 1380 Snow Road, the Magna Utah property, the Pancho Villa Bar, the E & J Lounge, 2106 South Platinum, the Juan Flores Farm, and 614 San Juan.  (Tr. 76-83.)  Petitioner testified that, although he considered himself the owner of these properties, he usually deeded them to his daughter and his

grandchildren. (Tr. 84.)  He admitted that none of the properties at issue were deeded to him. (Tr. 96.)

25.     Eleno Rodriguez-Aguirre testified that he co-owned a house on Country Club Road, the Pancho Villa Bar, the E & J Lounge, the Afghan Tree Farm, and the Juan Flores property. (Tr. 124-27.)  He testified that 601 San Miguel belonged to his wife. (Tr. 125.)  He admitted that none of the properties at issue were deeded to him. (Tr. 133-37.)  Eleno Rodriguez-Aguirre testified that the liquor license at the E & J Lounge was in his name. (Tr. 137.)

26.     Having listened to Petitioners' testimony, and having observed their demeanor, I find that they were not credible.  No documentary evidence was submitted that would indicate that Petitioners had interests in the properties at issue sufficient to confer standing.  I find that Petitioners clearly lacked standing to challenge the warrants.

27.      A motion to suppress filed on behalf of Petitioners would have been denied because they lacked standing to challenge the searches and seizures of the properties.  As motion to suppress would have been denied based on lack of standing, Petitioners were not prejudiced by counsel's decision not to challenge the seizures.  Therefore, Petitioners have failed to establish either cause or the prejudice components of *Strickland* with respect to this issue.

28.     Petitioners contend that counsel was ineffective in failing to file a motion to suppress challenging *ex parte* seizures of real property that were *per se* unconstitutional under *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993).  In *James Daniel Good*, the Supreme Court held that "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture."  The Court reasoned that the immobility of real property

ordinarily eliminates grounds for dispensing with pre-seizure proceedings. *Id.* at 57.

Nevertheless, a judgment of forfeiture may stand as long as impermissibly obtained evidence was

not used in the forfeiture proceeding, and the government returns any rents that accrued during

the illegal seizure of the properties at issue. *See United States v. 51 Pieces of Real Property*, 17

F.3d 1306, 1316 (10th Cir. 1994).

29.     The holding in *James Daniel Good* applies only to civil forfeiture cases involving

real property. *See United States v. One Parcel of Real Property Described as Lot 41, Berryhill

Farm Estates*, 128 F.3d 1386, 1392 (10th Cir.1997).   It does not apply to the arrest or detention

of criminal suspects. *See United States v. James Daniel Good Real Property*, 510 U.S. at 50.

The Supreme Court observed that exclusive reliance on the Fourth Amendment is appropriate in

the arrest context. *Id.*, 510 U.S. at 50 (*citing Gerstein v. Pugh*, 420 U.S. 103 (1975)). Counsel

was not ineffective by failing to raise an irrelevant argument.  Moreover, a motion to suppress

evidence in the criminal case based upon *James Daniel Good*  would have been denied.

Petitioners have failed to establish either the cause or the prejudice component of their ineffective

assistance of counsel claim with respect to this issue.

30.     Eleno Rodriguez-Aguirre contends that Mr. Ortiz was ineffective in failing to

move to suppress the evidence derived from the search of 5302 Country Club Road. Specifically,

he asserts the execution was unreasonable because the officers failed to  "knock and announce"

their presence before they forcibly entered the house and because there were no circumstances

justifying an unannounced entry.  The Supreme Court has held that the common-law

knock-and-announce principle "is an element of the reasonableness inquiry under the Fourth

Amendment." *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995).

31.     Although certain circumstances may justify entry without knocking and announcing, the Fourth Amendment encompasses a general presumption that police officers executing a search warrant for a residence must announce their presence and authority before entering. *United States v. Moore*, 91 F.3d 96, 98 (10th Cir. 1996). Accordingly, the federal "knock and announce" statute provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." *See* 18 U.S.C. § 3109.

32.     While officers are required to provide notice of their authority and purpose before forced entry, the Tenth Circuit has not established a bright-line rule to determine the amount of time officers must wait after knocking and announcing before forcibly entering a residence. *See United States v. Jenkins,* 175 F.3d 1208, 1213 (10th Cir. 1999). Instead, the amount of time that officers must wait after knocking and announcing depends on the particular facts and circumstances of each case. *Id.* The reference point for this determination is "the amount of time between when the officers begin to announce their presence and when the officers hit the door with a battering ram or other implement which could destroy the door and allow them entry." *United States v. McCloud*, 127 F.3d, 1284, 1288 n. 2 (10th Cir. 1997). Exigent circumstances such as the risk of destruction of evidence or the threat of physical violence may justify dispensing with the knock-and-announce principle altogether. *See Jenkins*, 175 F.3d 1214.

33.     Virginia Dodds Aguirre, the spouse of Eleno Rodriguez-Aguirre, testified at the December 10, 1999 evidentiary hearing that she was in the bathroom when she heard "a lot of noise, like yelling"and the agents were there in her bedroom "like nothing flat . . . in second." (Tr.

14

36-37; 41.)  She did not hear the agents announce their presence or knock on the front door before they entered the house. (Tr. 36-37; 41.)  Mrs. Aguirre testified that the bathroom "was way in the back" of the house. (Tr. 39.)

34.     Agent Patrick Shirey, an Agent with the IRS Criminal Investigations Division, testified that he was in the group of law enforcement officers that executed a search warrant at 5302 Country Club Road on October 21, 1992 at about 6:00 a.m. (Tr. 180.)  Agent Shirey testified that there were about eight to ten officers and agents in the entry team.  (Tr.180-81.)  After the agents had quietly assembled at the front door of the house, one of them banged on the door and several announced "federal agents" or "search warrant." (Tr. 182.)  They then waited about 15 or 20 seconds before entering the house. (Tr. 183.)  They gained entry by opening the front door, which was closed but not locked. (Tr. 183.)

35.     Agent Shirey's testimony was more reliable than Mrs. Aguirre's because he was in the midst of the group of agents when they entered the house.  Mrs. Aguirre also had an incentive to color her testimony in order to bolster her husband's case.  While I fully credit the testimony of Agent Shirey, I do not find the testimony of Mrs. Aguirre to be credible. Under the circumstances, 15 to 20 second was a reasonable time to wait before entering as there was a the risk of destruction of evidence or physical violence.   As no credible evidence was presented that the agents did not knock and announce their presence, a wait a reasonable time, before entering Eleno Rodriguez-Aguirre's house, a motion to suppress based on this issue would have been denied. Counsel was not ineffective by failing to raise an argument that had no merit.  Moreover, Petitioners were not prejudiced because a motion would have been denied.  Therefore, Petitioners have failed to establish either the cause or the prejudice component of their ineffective assistance

of counsel claim with respect to this issue.

36.     There is no basis in the record to conclude that counsel's decisions not to file motions to suppress were unreasonable.  An " 'attorney's decision not to file all motions requested by his clients [is] not ineffective assistance of counsel. Effective assistance does not demand that every possible motion be filed, but only those having a solid foundation.' " *United States v. Afflerbach*, 754 F.2d 866, 870 (10th Cir.1985) (*quoting United States v. Crouthers*, 669 F.2d 635, 643 (10th Cir.1982)).  Petitioners assertions are insufficient to characterize counsel's failure to file a motion to suppress as deficient performance.  Petitioners offered no relevant evidence in support of their arguments.  As  motions to suppress would have been denied, Petitioners failed to demonstrate prejudice.  Accordingly, with respect to Petitioner's arguments regarding their attorneys's failure to file motions to suppress, there was no ineffective assistance of counsel.

37.     Petitioners contend that their attorneys were ineffective in failing to investigate whether a buried kilogram of cocaine was planted by the government on forfeited real property known as the Afghan Tree Farm.  At the evidentiary hearing of December 10, 1999, Petitioners called Johnny Gonzales, who was employed by the City of Deming Gas Department as a backhoe crew leader in 1994, when the cocaine was unearthed.  (Tr. 16-17; 19.) Mr. Gonzales testified that he did not perform any excavation for law enforcement in 1994 and that he was not aware of a county backhoe crew. (Tr. 18.)  However, Mr. Gonzales admitted that Luna County probably owned a backhoe in 1994. (Tr. 21.)  He testified that if a package was within the center of a clump of earth, and it was not hit by the backhoe blade, it probably would not be ripped open. (Tr. 22.)

38.     Fred Loya testified that he was the City of Deming Gas Department foreman in

1994. (Tr. 46.)  Mr Loya testified that he did not dig up cocaine on a pine tree farm in 1994. (Tr. 46-47.)  Robert Tafoya testified that he was a blademan for the City of Deming in 1994, and did not dip-up any cocaine in connection with this case. (Tr. 50-51.)

39.    Petitioners' sister, Patricia Salaiz, testified that she and her husband would go hunting at the Afghan Tree Farm.  (Tr. 25.)  Mrs. Salaiz testified that after a rain, there were "big puddles, like little ponds all over the place." (Tr. 25.)  Gabriel Rodriguez-Aguirre testified that he buried trash at the Afghan Tree Farm, but never buried cocaine there.  (Tr. 88)

40.    Agent James R. Long, of the United States Customs Service, testified that, on August 24, 2000, he went to a property known as the Afghan Tree Farm with a Luna County Sheriff's Captain along with several individuals employed by the Luna County Road Department and a backhoe. (Tr. 147.)  Agent Long testified that the backhoe belonged to Luna County and that Luna County did "not really" have anything to do with the City of Deming. (Tr. 147-48.)

41.    Dan Williams, of the Luna County Road Department, testified that, on August 24, 1994, he transported a backhoe to a property known as the Afghan Tree Farm.  (Tr. 191-192.)  Mr. Williams was present when a package of cocaine was unearthed. (Tr. 192-193.)  Before the digging began, the surface of the ground appeared natural and smooth. (Tr.194.)

42.    Donnie Daniels testified, that on August 24, 1994, he was a narcotics investigator with Luna County Sheriff's Department. (Tr. 198-199.)  Mr. Daniels testified that he and others accompanied Agent Long to dig up "an underground kind of storage thing that had been caved in." (Tr. 199.).  Mr. Daniels watched as the cocaine was unearthed. (Tr. 199-200.)  At about a depth of six to seven feet, the backhoe started hitting boards and wrapping paper.  (Tr. 200.)  A little deeper, it hit a "square-looking bundle" wrapped in paper, which broke open and revealed a

white powder. (Tr. 200.) Mr. Daniels testified that Agent Long retrieved the bundle from the hole. (Tr. 200.) There was a small sink in the surface of the ground before the excavation began (Tr. 201.) Grass and weeds were growing on the surface. (Tr. 201.) It did not appear that the area had recently been disturbed. (Tr. 201.)

43. Petitioners presented the testimony of Janine Arvizu as an expert in forensic chemistry and quality control. (Tr. 151-54.) Ms. Arvizu testified that the quality of buried cocaine would have deteriorated over time and that there were very serious quality problems at the Dallas DEA laboratory during the mid-1990s resulting in an investigation. (Tr. 155-56.) She also testified that there were a number of internal inconsistencies in the DEA report regarding the buried cocaine. (Tr. 158.) On cross-examination, Ms. Arvizu admitted that she had never tested a sample for the presence of cocaine, that the DEA chemist who performed the testing was not the subject of the Dallas investigation, and that only one Dallas chemist was found responsible for the quality problems. (Tr. 165.)

44. The City of Deming is a separate governmental entity from Luna County. Petitioner's testimony from the City of Deming employees was irrelevant and did not indicate that the evidence was planted. The evidentiary hearing was continued and reconvened twice in order to allow Petitioners the opportunity to present evidence in support their contention that the government planted the kilogram of cocaine. In spite of these opportunities, Petitioners presented no credible evidence that the cocaine was planted by the government. Because Petitioners failed to demonstrate either cause or prejudice with respect to this claim, they have failed to establish ineffective assistance of counsel under *Strickland*.

45. Gabriel Rodriguez-Aguirre also contends that Mr. Kennedy was ineffective in

failing to investigate his potential alibis regarding Martinez's admissions that he was being tried in his stead, the possibility that he was being prosecuted for the crimes of his similarly named brother-in-law, and that he was in Deming, under daily supervision of his pretrial services officer, when witnesses claimed he was in California supervising and receiving drug shipments.

46.     As noted above, in order to establish ineffective assistance of counsel, Rodriguez-Aguirre must show that "counsel's representation fell below an objective standard of reasonableness"and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A habeas corpus petitioner has the burden of establishing both elements of *Strickland*. *Id.* 466 U.S. at 694. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *See id.* A "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-91.

47.     In an ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's performance. *See Miles v. Dorsey*, 61 F.3d 1459, 1475 (10th Cir. 1995) (citing *Strickland*, 466 U.S. at 690). When an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the petitioner must demonstrate, with some

precision, the content of the testimony they would have given at trial. *See Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir.1990).

48.    While three evidentiary hearings were held in this case, Gabriel Rodriguez-Aguirre completely failed to demonstrate what information additional investigation into these alleged alibis might have revealed. As a result, Petitioner failed to meet his burden of establishing ineffective assistance of counsel. In light of the substantial evidence of Petitioner's guilt, Mr. Kennedy's decision not to undertake additional investigation into alleged alibis did not fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. When weighed against the substantial evidence against Petitioner, it is clear that additional investigation on his supposed alibis would not have changed the outcome of the trial. Gabriel Rodriguez-Aguirre also failed to demonstrate he was prejudiced because he failed to set forth any allegations of what information such an investigation would have revealed, or what basis exist to assume the results of the trial would have been different had such an investigation been done. Thus, Petitioner has failed to demonstrate prejudice. Under the circumstances of this case, Mr. Kennedy's decision not to investigate Gabriel Rodriguez-Aguirre's alibi allegations was reasonable.

49.    Petitioners argue that their attorneys were ineffective because they failed to file a sworn declaration prior to impaneling the jury. They contend that "an entire reversible ground on appeal was precluded" by counsel's failure to file a sworn declaration. The Tenth Circuit held that the claim under 28 U.S.C. § 1867(d) was barred because Petitioners and their co-defendants did not comply with the Jury Selection Act. *See United States v. Gabriel Rodriguez-Aguirre*, 108 F.3d at 1238; *United States v. Eleno Rodriguez-Aguirre*, 108 F.3d at 1287. *See also United States v. Contreras*, 108 F.3d 1255, 1265-1268 (10th Cir. 1997). The Act provides, in pertinent

part, that a party challenging the jury selection process must file "a sworn statement of facts which, if true, would constitute a substantial failure to comply with [the Act]." 28 U.S.C. § 1867(d).

50.     Petitioners fare no better in the current action than they did on direct appeal because they failed to comply with § 1867 herein. Strict compliance with the procedural requirements of the Jury Selection Act is essential. *See United States v. Contreras*, 108 F.3d at 1266. Petitioners were required to comply with § 1867(d) and file a sworn statement of facts in order to obtain § 2255 review of an ineffective assistance of counsel claim based on the Jury Selection Act. *See United States v. Porcaro*, 784 F.2d 38, 43 (1st Cir. 1986); *United States v. Davis*, 939 F. Supp. 810, 818 (D. Kan. 1996). As Petitioners failed to comply with the procedural requirements of the Jury Selection Act herein, this claim is barred.

51.     Even if this claim were not barred by Petitioners' failure comply with § 1867(d), this claim would be denied on the merits because they failed to satisfy the prejudice component of *Strickland*. The Tenth Circuit determined that the jury selection process employed by Judge Bunton did not violate the Sixth Amendment fair-cross section requirement, the Sixth Amendment right to an impartial jury, or the Equal Protection Clause. *United States v. Contreras*, 108 F.3d at 1268-1270. Indeed, the Tenth Circuit thoroughly reviewed the excused jurors questionnaires and found that "all but perhaps two of the dismissed jurors were eligible for dismissal based on undue hardship or bias." *Id*. at 1269. Thus, the Tenth Circuit would have rejected Petitioners' Jury Selection Act claim on the merits. Moreover, as the remedy for violation of the Jury Selection Act is a new trial, *United States v. Calabrese*, 942 F.2d 218, 222 (3d Cir. 1991), and the evidence against Petitioners was overwhelming, a new trial would have not have altered the outcome of the

proceedings. Consequently, Petitioners have failed to establish that they were prejudiced by counsel's failure to file a sworn statement of facts under 28 U.S.C. § 1867(d).

52. Petitioners claim that their attorneys were ineffective by failing to request a limiting instruction on a co-defendant's guilty pleas. Co-defendant Art Rubio had pleaded guilty at the time of the second trial. (Tr. Vol. 14 at 3950-3952.) The Court instructed the jury as follows:

> The fact that a defendant was previously found guilty on another crime does not mean that defendant committed the crime for which he is on trial, and you must not use this prior conviction as proof of the crime charged in this case. You're here to decide whether the government has proved beyond a reasonable doubt that the defendants are guilty of the crimes charged. The defendants are not on trial of any act, conduct or offense not alleged in the superseding indictment. Neither are you concerned with the guilt of any other person not on trial as a defendant in this case.

(Tr. Vol. 19 at 5630.)

53. Thus, contrary to Petitioners' assertions, the jury was instructed as to the appropriate weight accorded to the co-defendant's guilty plea. Moreover, on direct appeal, the Tenth Circuit carefully reviewed the record and determined that there was no prejudice arising from improper limiting instructions. As this issue was resolved on direct appeal, it is not subject to review herein. *See United States v. Prichard*, 875 F.2d 789, 791 (10th Cir.1989) (absent intervening change in law, issues disposed of on direct appeal generally will not be considered in a § 2255 collateral attack).

54. Gabriel Rodriguez-Aguirre contends that Mr. Kennedy rendered ineffective assistance of counsel on appeal by failing to argue that he was sentenced under more punitive guidelines for conduct that occurred prior to their enactment in violation of the Ex Post Facto Clause of the United States Constitution. Although the general rule is that a sentencing court

22

applies the version of the United States Sentencing Guidelines ("Guidelines") in effect at the time

of sentencing, if the later version imposes harsher punishment and thereby implicates the Ex Post

Facto Clause, the court must apply the guideline in effect at the time of the defendant's offense.

*See United States v. Nichols*, 169 F.3d 1255, 1270 n. 3 (10th Cir.1999); *United States v. Svacina*,

137 F.3d 1179, 1186 (10th Cir.1998). The Ex Post Facto Clause is violated only if the

application of the later guideline disadvantages the defendant. *See United States v. Nelson*, 36

F.3d 1001, 1003 (10th Cir. 1994). Only one version of the guidelines must be used to calculate

the entire sentence. *Id.* at 1004.

      55. Petitioner bears the burden of proving both the deficiency and the prejudice prong

of the *Strickland* standard. *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Three

evidentiary hearings were held in this matter. Petitioner made no showing that application of the

guidelines disadvantaged him. As Petitioner failed to establish he was disadvantaged by

application of the guideline, he had failed to establish the prejudice prong of *Strickland*.

      56. Gabriel Rodriguez-Aguirre claims that Mr. Kennedy was ineffective by failing to

request concurrent sentencing. Specifically, he contends that, because his prior sentence would

not have been discharged until May10, 1995, he was entitled to concurrent sentencing pursuant to

U.S.S.G. § 5G1.3. As noted above, Petitioner had the burden of establishing both prongs of

*Strickland*. Petitioner has offered nothing in support his conclusory allegations with respect to

this claim that would indicate that Mr. Kennedy was ineffective, or that he was prejudiced

thereby. Thus, Petitioner has failed establish that Mr. Kennedy rendered ineffective assistance of

counsel.

      57. In addition to the ineffective assistance of counsel claims, Petitioners assert that

their convictions were obtained in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and 18 U.S.C. § 201 (c)(2) and through prosecutorial misconduct. In addition to being time-barred with respect to Eleno Rodriguez-Aguirre and procedurally barred with respect to both Petitioners, these claims would also fail on the merits.

58. Petitioners claim that the United States failed to disclose exculpatory evidence regarding payments made to Alicia Armendariz. Specifically, they claim that Armendariz was paid a total of $80,000 in exchange for her testimony, but that the prosecution only disclosed $40,000 in payments. Petitioners also allege that Armendariz was arrested and charged with felony drug trafficking between the first and second trials, but that the prosecution had her charges reduced in order to minimize the damage to her credibility at trial.

59. At the hearing of December 10, 1999, Armendariz testified that Customs Agents Sawyer and Long gave her approximately $80,000 in cash over a two-year period. (Tr. 53-54.) She arrived at the sum of $80,000 by estimating the total amount that the government spent on her during the two-year period she was cooperating. (Tr. 65-67.) She stated that she was not bribed and that the government gave her money for subsistence only. (Tr. 61.) She testified that the was unable to work because she was scared to have a job. (Tr. 61.) Armendariz testified that the government did not have any charges against her dropped, but that she had an agreement with the United States to testify truthfully. (Tr. 55; 57.) She maintained that she never knowingly lied under oath. (Tr. 55.)

60. Armendariz testified that after she contacted the United States Attorneys' Office in Albuquerque, her Oklahoma felony charges were dismissed and two misdemeanor charges remained. (Tr. 72-73.) She had "no idea" if the Assistant United States Attorneys had anything

to do with the reduction in charges.  (Tr. 72.)

61.      In order to establish a *Brady* violation, petitioner bears the burden of showing that the prosecution suppressed material evidence favorable to petitioner.  *Moore v. Gibson*, 195 F.3d 1152, 1164 (10th Cir. 1999).  Suppressed exculpatory evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citation omitted). The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a  fair trial "resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

62.      Petitioners have failed to show that the allegedly suppressed, allegedly exculpatory information was material.  They fail to show how payments totaling of $80,000 materially differed from payments totaling $40,000 and failed to show how knowledge of the higher estimated dollar amount would have altered the outcome of the case.  The jury was aware that Armendariz had a felony conviction. (Tr. 73-74.)  Petitioners received a fair trial resulting in a verdict worthy of confidence.  There was no reasonable probability that, had the information of the allegedly higher payments and been disclosed to Petitioners that the result of the trial would have been different. In light of the overwhelming evidence of Petitioners' guilt, information regarding the amount of the payments to Armendariz and the status her Oklahoma charges would not have altered the outcome of the proceedings.

63.      Petitioners claim that their convictions were obtained based on "purchased testimony" induced by offers of leniency and monetary payments in violation of 18 U.S.C. § 201

(c)(2). In support of this argument, Petitioners refer to the Tenth Circuit's abrogated panel decision in *Singleton v. United States*, 144 F.3d 1343 (10th Cir. 1998) (*Singleton I*), *rev'd en banc*, 165 F.3d 1297 (10th Cir. 1999) (*Singleton II*), which held that plea agreements offering leniency in exchange for truthful testimony by a cooperating witness violated 18 U.S.C. § 201(c)(2). However, only ten days after the panel filed its decision, the Tenth Circuit *en banc sua sponte* vacated the panel hearing and granted rehearing *en banc*. *Singleton I* was subsequently reversed by the Tenth Circuit *en banc* on the basis that the word "whoever," within the context of 18 U.S.C. § 201(c)(2), did not include the United States Attorney. *Singleton II*, 165 F.3d at 1302. Thus, *Singleton I* is no longer the law, and was not the law during any relevant period at issue.

64. Nonetheless, Petitioners persist in claiming that the prosecution violated 18 U.S.C.§ 201(c)(2) because Armendariz received subsistence payments and her Oklahoma charges were reduced. It is undisputed that Armendariz received subsistence payments and that she testified pursuant to an agreement with the government. By its very terms, the statute authorizes a party calling a witness to pay that witness for subsistence and for the reasonable value of time lost in attending proceedings. 18 U.S.C. § 201(d). Moreover, § 201(c)(2) does not prohibit the Government from granting leniency in exchange for truthful testimony. *Singleton II*, 165 F.3d at 1302. Petitioners made no credible factual showing that any of the testimony at trial was untruthful. Therefore, I find that Petitioners' claims that their convictions were obtained in violation of 18 U.S.C. § 201 (c)(2) are wholly devoid of merit.

65. In her Motion to Augment the Record, Ms. Grantland asserts that, on July 8, 1994, Armendariz called AUSA Charles Barth and told him about felony charges pending against

her in Oklahoma. Ms. Grantland claims that Ms. Armendariz told her that Barth faxed a letter to

her hotel confirming that she was a cooperating witness and that she in turn faxed the letter to her

attorney. Counsel states that on August 10, 1994, the felony charges against Armendariz were

dismissed and re-filed as a misdemeanor. However, Armendariz testified that she had "no idea"

as to whether the AUSA had anything to do with the reduction in charges. The materials

submitted by Ms. Grantland do not establish that the AUSA participated in the Oklahoma

charging decision. Thus, this claim is without merit.

66.     Likewise, any claim that Petitioners' attorneys were ineffective for failing to raise

the holding in *Singleton I* must fail. Petitioners were tried and convicted in 1994, three and a half

years before *Singleton I* was issued. Thus, the *Singleton* panel decision did not exist at the time

of Petitioners' conviction. Petitioners' attorneys were not deficient in failing to raise an argument

that did not exist. *Tarver v. Hopper*, 169 F.3d 710, 714 (11th Cir. 1999). Petitioners also failed

to demonstrate they were prejudiced by their attorneys' representation with respect to the

*Singleton* issue. I find that counsel's conduct did not fall below an objective standard of

reasonableness and that Petitioners were not prejudiced by their attorneys' performance.

Petitioners have failed to establish ineffective assistance of counsel.

67.     Finally, Petitioners claim that their convictions were obtained through

prosecutorial misconduct. They cite to an affidavit allegedly executed by Armendariz.

Petitioners' contentions are not supported by the record. Armendariz testified that an affidavit

attributed to her was not in her words. (Tr. 59.) She explained that she signed a handwritten

affidavit and left it with attorney Ralph Binford's secretary. (Tr. 70.) Armendariz did not see the

typed version of the affidavit until Mr. Binford sent her a copy. (Tr. 62; 70.) The typed affidavit

materially differed from the handwritten version.  (Tr. 58; 62-63; 70.)  Armendariz's testimony establishes that the affidavit attributed to her by Petitioners was false.  Petitioners' assertions of prosecutorial misconduct are not supported by the record.  Petitioners have failed to demonstrate prosecutorial misconduct.

## RECOMMENDED DISPOSITION

I recommend that Petitioners' Motions to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, brought pursuant to 28 U.S.C. § 2255, be denied.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**